## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## CIVIL DIVISION

**ASHLEY NIEVES**                                      Case No.

       **Plaintiff,**

     **v.**

**LEXISNEXIS RISK SOLUTIONS,
INC,**

**and,**

**TRANSUNION LLC,**

**and,**

**EXPERIAN INFORMATION
SOLUTIONS, INC.,**

**and,**

**EQUIFAX, INC.**


      Defendants.

_____/

.

## <u>COMPLAINT FOR DAMAGES WITH JURY DEMAND</u>

Plaintiff, Ashley Nieves, through counsel, for their Complaint against Defendants

lexisNexis Risk Solutions, TransUnion LLC, Experian Information Solutions, Inc., and

Equifax Inc., states:

**INTRODUCTION**

The FCRA was enacted to protect consumers by preventing the transmission of inaccurate information in consumer reports and establishing confidential and responsible credit reporting practices.  In June of 2022, the Consumer Financial Protection Bureau entered a final rule adopting several amendments to the Fair Credit Reporting Act (FCRA), amending Regulation V ("Final Rule" or Regulation V") to implement a new section 605C ("Section 605C").  Regulation V covers identity theft. Pursuant to Regulation V, identity theft  means a fraud committed or attempted using the identifying information of another person without authority. Regulation V was amended to also cover victims of human trafficking. Section 605C provides that a consumer reporting agency may not furnish a consumer report containing any adverse item of information concerning a consumer that resulted from a severe form of trafficking in persons or sex trafficking if the consumer has provided trafficking documentation to the consumer reporting agency.  Pursuant to Regulation V, "trafficking documentation" includes certain determinations made by a non-governmental organization or member of a human trafficking task force when authorized by a Federal, State, or Tribal governmental entity, and that, for purposes of the new section, documentation by a State governmental entity includes documentation at both the State and local level. Regulation V permits a consumer to self-attest as a victim of trafficking if the document or an accompanying document is signed or certified by a Federal, State, or Tribal governmental entity, *a court of competent jurisdiction*, or the representatives of these entities. *[Emphasis added.]*

2

Regulation V also clarifies that a document filed in a court of competent jurisdiction is an acceptable determination that a consumer is a victim of trafficking where: (1) a central issue in the case is whether the consumer is a victim of trafficking; and (2) where the court has conducted an initial review of the victim's claim for purposes of a motion to dismiss or motion for summary judgment and the result is in favor of the victim. Regulation V establishes procedures explaining how consumers should submit the required documentation to consumer reporting agencies, what actions a consumer reporting agency must perform when it receives that documentation, the limited circumstances under which a consumer reporting agency may ask for additional information, written policies and procedures, and recordkeeping requirements to monitor compliance.

## **FACTUAL ALLEGATIONS**

1.  Plaintiff, Ms. Ashley Nieves (hereinafter referred to as "Ms. Nieves") is a "Consumer" as defined by 12 CFR 1022.3(f).

2.  Ms. Nieves is a survivor of "severe forms of human trafficking" as defined by Trafficking Victims Protection Act of 2000, 22 U.S.C. 7102(11) .

3.  Ms. Nieves is a survivor of "sex trafficking" as defined by Trafficking Victims Protection Act of 2000, 22 U.S.C. 7102(12).

4.  Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian") , Transunion LLC ("Transunion"), LexisNexis Risk Solutions

("LNRS")(hereinafter collectively referred to as "Defendants") are each "consumer reporting agencies" as defined by 603(f) of the FCRA.

5.  As a result of the sex trafficking, Ms. Nieves was also a victim of identity theft because the traffickers used her identity to obtain, goods, services and housing without her consent[1], and many times without her knowledge.

6.  Additionally, Ms. Nieves was forced under duress to commit actions and/or crimes that she had no ability to refuse.

7.  As a part of an extensive rehabilitation program, Ms. Nieves also received services from the Justice Restoration Center to expunge her criminal records because the crimes were committed under duress as a result of human sex trafficking.

8.  Ms. Nieves was only qualified to expunge her criminal record because of her status as a survivor of sex trafficking.

9.  The expungement process required in the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, to determine that Ms. Nieves was a victim of sex trafficking. Upon making that determination, the Court entered the Stipulated Order to Expunge Defendant/Petitioner's Criminal Record History (hereinafter referred to as "*Expungement Order*")(a true and correct copy of the *Expungement Order* is attached hereto as *Exhibit 1.*

---

[1] Ms. Nieves was continually under duress to comply with demands of the traffickers.

10. During her recovery and rehabilitation process (and continuing thereafter) Ms. Nieves attempted to obtain services, housing and credit needed to re-enter and function in society.

11. During this process Ms. Nieves learned that there were adverse items on her consumer report that resulted from "a severe form of trafficking in persons or sex trafficking" of which Ms. Nieves was the victim, many of which were erroneously attributed to her identity and consumer report.

12. Ms. Nieves retained The Advocacy Group to assist her in seeking removal of these adverse items from her consumer reports.

13. With the assistance of The Advocacy Group, Ms. Nieves sent notices to Experian, Equifax, Transunion and LexisNexis Risk Solutions, Inc. ("LNRS") (hereinafter collectively referred to as "Defendants").

14. On or about September of 2022, Ms. Nieves contacted the Defendants and notified them of her status as a survivor of severe forms of human trafficking and provided the required supporting documentation including the Expungement Order (*Exhibit 1*), the Power of Attorney (*Exhibit 2*), and her drivers license. Therein she requested various adverse items be suppressed from her credit reports as those items were the result of the severe sex human trafficking.

15. On or about March 20, 2023, February 26, 2024 and September 19, 2024, Ms. Nieves sent dispute notices to the furnishers pursuant to the FCRA 605C (Regulation V) requesting errors from her credit file be corrected as the

information resulted from a severe form of trafficking in persons or sex trafficking of which Ms. Nieves was the victim.

16. With each notice, Ms. Nieves submitted the required "trafficking documentation as defined by 12 C.F.R. 1022.142(b)(6), which included a true and correct copy of the Expungement Order. See *Exhibit 1.*

17. As explained supra, the Expungement Order was entered by a "court of competent jurisdiction", which is a "governmental entity", and clearly states Ms. Nieves was a victim of trafficking.  Additionally, the court conducted an initial review of the Ms. Nieves' claims in the Petition for Expungement and after having been fully advised in the premises, granted relief in favor of Ms. Nieves. See Expungement Order, *Exhibit 1.*

18. Also enclosed with each notice was a copy of Ms. Nieves' Florida Drivers License, a Limited Power of Attorney authorizing The Advocacy Group to act on behalf of Ms. Nieves, and other required supporting documents or identification information such as social security number, address, and date of birth.  A copy of the Limited Power of Attorney is attached hereto as *Exhibit* 2.  Defendants are each responsible for following reasonable procedures to assure maximum possible accuracy whenever they prepare consumer reports from information in their shared database.

**March 2023 FCRA Dispute Notice**

19.    On or about March 20, 2023, Ms. Nieves sent a dispute notice to Defendants regarding their failure to suppress reporting of adverse items and information that resulted from a severe form of trafficking in persons or sex trafficking. A true and correct copy of the March 2023 Dispute Notice (not including the confidential exhibits[2]) is attached hereto and incorporated herein as *Exhibit* 3 and is hereinafter referred to as *Exhibit* 3 or "March 2023 Dispute Notice").

20.    Ms. Nieves again provided a true and correct copy of the Expungement Order (*Exhibit 1*) a copy of Ms. Nieves' Florida Drivers License, and a copy of the Limited Power of Attorney (*Exhibit 2*).

21.    Ms. Nieves requested that Defendants suppress and/or remove any and all erroneous addresses that were associated with the human traffickers which should not have been associated with Ms. Nieves, providing a list thereof.

22.    Ms. Nieves requested erroneous phone numbers associated with the human traffickers be suppressed or removed from her consumer reports, providing a list thereof

23.    Ms. Nieves requested that erroneous spellings or versions of her names, that were likely misspelled by human traffickers when using her identity, be removed or suppressed from her consumer reports.

---

[2] Each Defendant has the confidential exhibits in its care, custody and control; Ms. Nieves shall produce confidential exhibits pursuant to a protective order in this pending litigation.

24.  In the March 2023 Dispute Notice, Ms. Nieves advised that her criminal record, which had been expunged pursuant to the Expungement Order (*Exhibit 1*), should be suppressed from her credit report pursuant to Section 605c and that she had received denials of consumer credit due the reporting of same from Regions Bank and RentGrow. See attached denial of credit from Regions bank due to numerous addresses and felony record. See *Exhibit 4* referred to as "Regions Denial".

25.  Ms. Nieves was mortified and emotionally distraught to learn that her felony record was being disclosed to creditors.

26.  In the March 2023 Dispute Notice, Ms. Nieves further advised Defendants of adverse reporting by FLORIDA DEPARTMENT OF REVENUE - CHILD SUPPORT that resulted from "a severe form of trafficking in persons or sex trafficking" of which Ms. Nieves was the victim and therefore requested suppression pursuant to Section 605c.

27.  As explained, Ms. Nieves was not free to obtain any income or to pay for any personal or familial expenses and was not permitted to retain any funds when she was a victim of human trafficking. Additionally, she did not receive any notices regarding child support proceedings. As a result, Child Support was awarded to the father of her children (who also was not in custody or care of her children). She was forced to erroneously pay back child support to their father that did not actually go towards her children's care. The reporting of this debt resulted  from "a

severe form of trafficking in persons or sex trafficking" of which Ms. Nieves was the victim, and thus should have been suppressed.

28.    LNRS failed to provide a response to Ms. Nieves' March 2023 Dispute Notice.

29.    Ms. Nieves has requested an updated copy of her consumer report and file from LNRS on multiple occasions since the March 2023 Dispute Notice, but is still awaiting a copy.

30.    Most recently, Ms. Nieves requested a copy on February 2, 2025 and March 17, 2025 and March 18, 2025.

**January 2024 Dispute Notice**

31.    On January 31, 2024, Ms. Nieves received a denial from Chase bank for an Amazon credit account that she needed for purchasing household goods. A true and correct copy of the Chase denial is incorporated herein and attached hereto as "Chase Denial" or *Exhibit 5*.

32.    Ms. Nieves requested a copy of her consumer credit reports from the CRAs, but only received copies from Equifax and Experian.

33.    Due to the continued failure to suppress or remove adverse items that resulted from "a severe form of trafficking in persons or sex trafficking" of which Ms. Nieves was the victim, Ms. Nieves sent another FCRA dispute notice to Experian and Equifax. A true and correct copy of the February 2024 FCRA dispute notice

(not including the confidential exhibits[3]) is attached hereto and incorporated herein and is hereinafter referred to as *Exhibit* 6 or "February 2024 Dispute Notice").

34.  In the February 2024 Dispute Notice, Ms. Nieves again provided  a true and correct copy of the Expungement Order (see *Exhibit 1)* a copy of Ms. Nieves' Florida Drivers License, a Limited Power of Attorney (see *Exhibit 2*).

35.  Ms. Nieves again requested Experian and Equifax suppress and/or remove any and all prior erroneous addresses that were associated with the human traffickers which should not have been associated with Ms. Nieves.

36.  Ms. Nieves again requested erroneous phone numbers associated with the human traffickers be suppressed or removed from her consumer reports by Experian and Equifax.

37.  Ms. Nieves again requested that erroneous spellings or versions of her names, that were likely misspelled by human traffickers when using her identity, be removed or suppressed from her consumer reports by Experian and Equifax.

38.  In response to Ms. Nieves' February 2024 Dispute Notice, Equifax sent a letter advising Ms. Nieves that she did not provide sufficient documentation to determine that she was a victim of human trafficking and refused to suppress the requested items. A true and correct copy of the response letter from Equifax is attached hereto as *Exhibit* 7.

---

[3] Each Defendant has the confidential exhibits in its care, custody and control; Ms. Nieves shall produce confidential exhibits pursuant to a protective order in this pending litigation.

39. In response to Ms. Nieves' February 2024 FCRA Dispute Notice, Experian sent Ms. Nieves a letter advising that specific items were blocked pursuant to Section 605c as a result of her request including the Child Support Enforcement action. A true and correct copy of the redacted response letter from Experian is attached hereto as *Exhibit* 8.

40. However, Experian sent a second response letter to Ms. Nieves advising that their reinvestigation had not resolved her dispute and provided a report of items that were still included on her report which included the erroneous addresses, phone numbers and names associated with Ms. Nieves as a result of the human trafficking. A true and correct copy of the redacted second response letter to Ms. Nieves' February 2024 Dispute Notice is attached hereto as *Exhibit 9*.

**September 2024 Dispute Notice**

41. Ms. Nieves again requested a copy of her consumer credit reports from the CRAs in September of 2024, but only received a copy from Experian and Equifax.

42. Upon review of Ms. Nieves' consumer reports as of the September 12, 2024, Ms. Nieves learned that adverse reporting had not been suppressed despite her multiple requests.

43. It became apparent that Equifax and Experian would not remove the erroneous addresses from her file in response to her dispute notices.

44.    Additionally, Equifax and Experian failed to suppress a medical debt that was incurred as a result of the severe sex trafficking; Ms. Nieves again requested this adverse item be suppressed pursuant to 605c.

45.    In response Equifax sent multiple letters advising that Ms. Nieves had failed to provide adequate documentation of her status as a human trafficking survivor despite her submission of the Expungement Order being included with her request along with other identifying documentation.

46.    As a result of Defendants' actions and omissions, Ms. Nieves has suffered actual damages, including without limitation credit denials, out-of-pocket expenses, detriment to her credit rating and emotional distress.

47.    Ms. Nieves requested copies of her consumer report from LNRS again in February and March of 2025 on three occasions, but is still waiting to receive the requested report.

48.    Ms. Nieves requested copies of her consumer reports from Equifax, Experian and Transunion, but the online system of Equifax and Transunion denied access to her consumer reports.

49.    The adverse information related to human sex trafficking remains on her consumer report with Experian as of the date of this filing.

50.    Upon information and belief, the adverse information, including the addresses associated with her former traffickers still remains on the consumer reports controlled by LNRS, Transunion and Equifax.

## COUNT ONE: AGAINST LEXIS NEXIS RISK SOLUTIONS, EXPERIAN, EQUIFAX, AND TRANSUNION VIOLATIONS OF 15 U.S.C. §§ 1681, et seq.
### (Failure to conduct a reasonable investigation)

51. Plaintiff restates and incorporates all of her statements and allegations contained in paragraphs 1 through 50, in their entirety, as if fully rewritten herein.

52. As stated above, supra, Ms. Nieves sent disputes LNRS, Experian, Equifax, and TransUnion notifying them of her status as a human trafficking survivor and along with the required documentation (see *Exhibits 1*, 3, 6, and 10) requesting that each CRA respectively suppress adverse items on her consumer report that resulted from "a severe form of trafficking in persons or sex trafficking" of which Plaintiff was the victim.

53. Each of these disputes was sent by Ms. Nieves to each CRA's respective designated address to receive written disputes. *Id.*

54. Ms. Nieves explained the importance of removing the addresses and phone numbers that were associated with her trafficker because the trafficker had stolen her identity and used that information to obtain credit in her name without her authorization.

55. Additionally, Ms. Nieves explained that the other adverse items referenced in her dispute notices resulted from a severe form of trafficking in persons or sex trafficking and needed to be suppressed pursuant to Section 605c of the FCRA.

56.  As a result of the CRAs failure to suppress the addresses and other adverse items, Ms. Nieves was denied credit and suffered emotional distress due to information related to human trafficking being disclosed to her creditors.

57.  Each of the three CRAs knew or should have known that (1) Ms. Nieves is a survivor of sex trafficking and (2) that the adverse information resulted from the human trafficking because Ms. Nieves provided notice on a minimum of two occasions.

58.  Upon information and belief, the adverse information related to the human trafficking is still being reported by the CRAs and continues to curtail Ms. Nieves' ability to re-establish her credit since rebuilding her life as a survivor of human trafficking..

59.  Based on the allegations above Equifax failed to suppress the information that resulted from human trafficking in response to Ms. Nieves' dispute as required by 15 U.S.C. § 1681c..

60.  Based on the allegations above Experian failed to suppress the information that resulted from human trafficking in response to Ms. Nieves' dispute as required by 15 U.S.C. § 1681c.

61.  Based on the allegations above TransUnion failed to suppress the information that resulted from human trafficking in response to Ms. Nieves' dispute as required by 15 U.S.C. § 1681c.

62. Based on the allegations above LNRS failed to suppress the information that resulted from human trafficking in response to Ms. Nieves' dispute as required by 15 U.S.C. § 1681c.

63. Based on the allegations above Equifax failed to conduct a reasonable investigation with respect to the disputed information as to Ms. Nieves as required by 15 U.S.C. § 1681s-2(b)(1)(b) and/or § 1681i(a) respectively.

64. Based on the allegations above Experian failed to conduct a reasonable investigation with respect to the disputed information as to Ms. Nieves as required by 15 U.S.C. § 1681s-2(b)(1)(b) and/or § 1681i(a) respectively.

65. Based on the allegations above TransUnion failed to conduct a reasonable investigation with respect to the disputed information as to Ms. Nieves as required by 15 U.S.C. § 1681s-2(b)(1)(b) and/or § 1681i(a) respectively.

66. Based on the allegations above LNRS failed to conduct a reasonable investigation with respect to the disputed information as to Ms. Nieves as required by 15 U.S.C. § 1681s-2(b)(1)(b) and/or § 1681i(a) respectively.

67. Each of the CRA's respective continued failure to suppress adverse items of information that resulted from a severe form of trafficking in persons or sex trafficking, in light of its knowledge, was willful. Ms. Nieves is eligible for statutory and punitive damages.

68.    The foregoing acts and omissions by each CRA constitute willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

69.    As a result of each and every willful violation of the FCRA committed by Equifax, Experian, and TransUnion with respect to Ms. Nieves consumer reports, Ms. Nieves is entitled to statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from each Defendant as applicable.

### <u>VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF PURSUANT TO 28 U.S. CODE § 1746</u>

I, Ashley Nieves, hereby states under penalty of perjury as follows:

1. I am the Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorney and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I am bringing this civil Complaint in good faith and solely for the purposes set forth in it.

6. I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 19, 2025



Ashley Nieves[4]

Dated March 19, 2025

*Respectfully submitted,*

/s/ *Jessica L. Kerr, Esq.*
Jessica L. Kerr, Esquire
*Counsel for Plaintiff*
Florida Bar no. 92810
**THE ADVOCACY GROUP**
111 NE 1st Street, Fl8 #8517
Miami, FL 33132
Telephone: (954) 282-1858
Email: service@advocacypa.com
Email: jkerr@advocacypa.com

## JURY DEMAND

Plaintiff William Hagerty hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ *Jessica L. Kerr, Esq.*
Jessica L. Kerr, Esquire
Florida Bar no. 92810

---

[4]  This instrument has been verified under penalty of perjury without notarization as allowed by 28 U.S. Code § 1746.